Melissa E. Flax (mflax@carellabyrne.com)
Michael Cross (mcross@carellabyrne.com)
**CARELLA, BYRNE, CECCHI,**
  **OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700 (telephone)

*Of Counsel*
Christine J. Siwik (csiwik@rmmslegal.com)
William A. Rakoczy (wrakoczy@rmmslegal.com)
Gregory A. Duff (gduff@rmmslegal.com)
Trang D. Hoang (thoang@rmmslegal.com)
**RAKOCZY MOLINO MAZZOCHI SIWIK LLP**
6 West Hubbard Street, Suite 500
Chicago, Illinois 60654
(312) 222-6304 (telephone)

*Attorneys for Plaintiff Perrigo Research
& Development Co.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PERRIGO RESEARCH & DEVELOPMENT COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> GLAXOSMITHKLINE CONSUMER HEALTHCARE, L.P. and GLAXOSMITHKLINE LLC, <br><br> Defendants. | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Perrigo Research & Development Company ("Perrigo"), by and through

the undersigned attorneys and for its Complaint against GlaxoSmithKline Consumer Healthcare,

1

L.P. ("GSK CHC") and GlaxoSmithKline LLC ("GSK LLC") (collectively, "Defendants"), alleges as follows:

1.      Perrigo brings this action to obtain declaratory relief against Defendants, under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and the provision of the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act ("FFDCA") establishing civil actions for patent certainty, 21 U.S.C. § 355(j)(5)(C), that Perrigo's generic Nicotine Polacrilex Lozenge, 2mg/4mg (mini) products do not infringe U.S. Patent Nos. 8,501,164 ("the '164 patent") and 8,940,772 ("the '772 patent"), or that such patents are invalid; thereby giving Perrigo patent certainty and allowing the U.S. Food and Drug Administration ("FDA") to provide Perrigo final approval to market its Nicotine Polacrilex Lozenge, 2mg/4mg (mini) products so that such products may be marketed immediately under the applicable statutory and FDA regulatory provisions, which allows the public to enjoy the benefits of generic competition for these products.

2.      Perrigo provided Defendants with the notice required by 21 U.S.C. § 355(j)(2)(B) by letter dated December 28, 2017 ("Perrigo's Notice Letter") pertaining to a Prior Approval Supplement ("PAS") that Perrigo had submitted to FDA in connection with Perrigo's Abbreviated New Drug Application ("ANDA") No. 203690.  FDA previously approved Perrigo's ANDA No. 203690 in 2012.  Perrigo's Notice Letter detailed reasons why the Nicotine Polacrilex Lozenge, 2mg/4mg (mini) products in Perrigo's PAS to its approved ANDA ("Perrigo's ANDA Products") do not infringe any claim of the '164 and '772 patents, as well as why such claims of these patents are invalid.  Perrigo's Notice Letter also included an Offer of Confidential Access ("OCA").

3.      Because Defendants did not assert the '164 and '772 patents, both of which are listed in FDA's so-called "Orange Book" for Defendants' Nicorette® (nicotine polacrilex) Troche/Lozenge, 2mg and 4mg, within 45 days of receipt of Perrigo's Notice Letter, Perrigo has a statutory right pursuant to 21 U.S.C. § 355(j)(5)(C) to file and maintain a declaratory judgment action against Defendants under 28 U.S.C. §§ 2201 and 2202 to obtain a declaration that the manufacture, use, offer for sale, sale, and/or importation into the United States of Perrigo's ANDA Products will not infringe any valid and enforceable claim of the '164 and '772 patents.

4.      Perrigo seeks a declaration that the manufacture, use, sale, offer for sale, and/or importation of Perrigo's generic Nicotine Polacrilex Lozenge, 2mg/4mg (mini) products prior to June 14, 2029 does not constitute infringement of the '164 patent, and that the manufacture, use, sale, offer for sale, and/or importation of Perrigo's generic Nicotine Polacrilex Lozenge, 2mg/4mg (mini) products prior to April 30, 2029 does not constitute infringement of the '772 patent.  On information and belief, GSK CHC and GSK LLC have the right to enforce the '164 and '772 patents.

## PARTIES

5.      Plaintiff Perrigo is a corporation organized and existing under the laws of the state of Michigan, having its principal place of business at 515 Eastern Avenue, Allegan, Michigan 49010.

6.      On information and belief, Defendant GSK CHC is a limited partnership organized and existing under the laws of the State of Delaware and has a principal place of business at 184 Liberty Corner Road, Warren, New Jersey 07059.

7.     On information and belief, Defendant GSK LLC is a limited liability company organized and existing under the laws of the State of Delaware and has a principal place of business at 184 Liberty Corner Road, Warren, New Jersey 07059.

## JURISDICTION AND VENUE

8.     Perrigo brings this declaratory judgment action under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*; the FFDCA, 21 U.S.C. § 301 *et seq.* (as amended by the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (codified as amended 21 U.S.C § 355) (commonly known as the "Hatch-Waxman Amendments" or "Hatch-Waxman")); the Medicare Prescription Drug, Improvement, and Modernization Act ("MMA") of 2003, Pub. L. No. 108-173, 117 Stat. 2066 (2003); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

9.     This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a); under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and under the MMA, 21 U.S.C. § 355(j) and 35 U.S.C. § 271(e)(5).  Perrigo seeks a declaration that the manufacture, use, sale, offer for sale, and/or importation of Perrigo's ANDA Products does not constitute infringement of the '164 or '772 patents, which on information and belief, Defendants have the right to enforce.  Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, this Court is authorized to provide declaratory relief relating to the subject matter of this action, and Perrigo is entitled to a judgment from this Court with respect to the subject matter of this action.

10.     This is an action for declaratory judgment in a case of actual controversy pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

11. An actual and justiciable controversy exists between Perrigo and Defendants, at the very least, concerning the issue of whether Perrigo's manufacture, use, offer for sale, sale and/or importation of Perrigo's ANDA Products would infringe any valid or enforceable claim of the '164 and/or '772 patents.

12. A judicial declaration confirming that the manufacture, use, offer for sale, sale, and/or importation of Perrigo's generic Nicotine Polacrilex Lozenge, 2mg/4mg (mini) products would not and does not constitute infringement of any valid or enforceable claim of the '164 or '772 patents, is necessary and appropriate to resolve this controversy.

13. This Court has personal jurisdiction over GSK CHC. On information and belief, GSK CHC conducts substantial business in, and has regular systematic contact with, this District. On information and belief, GSK CHC is in the business of, among other things, researching, developing, manufacturing, marketing, and/or selling pharmaceutical products throughout the United States and New Jersey. On information and belief, GSK CHC, directly or indirectly, researches, develops, manufactures, markets, and/or sells pharmaceutical products throughout the United States and in New Jersey, including Nicorette® (nicotine polacrilex) Troche/Lozenge, 2mg and 4mg.

14. On information and belief, GSK CHC purposefully has conducted, and continues to conduct, substantial business in this District, including but not limited to the manufacture and sale of pharmaceutical products (including Nicorette® (nicotine polacrilex) Troche/Lozenge, 2mg and 4mg) to New Jersey residents; and it regularly solicits business from, does business with, and derives revenue from such goods provided to customers in New Jersey.

15. On information and belief, GSK CHC maintains headquarters at 184 Liberty Corner Road, Warren, New Jersey 07059.

16.    On information and belief, GSK CHC has a principal place of business at 184 Liberty Corner Road, Warren, New Jersey 07059.

17.    On information and belief, GSK CHC has a regular and established place of business at 184 Liberty Corner Road, Warren, New Jersey 07059.

18.    On information and belief, GSK CHC operates as a subsidiary of GlaxoSmithKline plc.  On information and belief, GlaxoSmithKline plc and/or its subsidiaries, including GSK CHC, maintain a regular and established place of business at 184 Liberty Corner Road, Warren, New Jersey 07059.  On information and belief, the corporate office facilities at Warren house a cross-functional mix of employees, including marketing and sales, research and development, quality, and supply chain teams.

19.    On information and belief, GSK CHC is registered to do business in New Jersey.

20.    This Court has personal jurisdiction over GSK LLC.  On information and belief, GSK LLC conducts substantial business in, and has regular systematic contact with, this District.  On information and belief, GSK LLC is in the business of, among other things, researching, developing, manufacturing, marketing, and/or selling pharmaceutical products throughout the United States and New Jersey.  On information and belief, GSK LLC, directly or indirectly, researches, develops, manufactures, markets, and/or sells pharmaceutical products throughout the United States and in New Jersey, including Nicorette® (nicotine polacrilex) Troche/Lozenge, 2mg and 4mg.

21.    On information and belief, GSK LLC purposefully has conducted, and continues to conduct, substantial business in this District, including but not limited to the manufacture and sale of pharmaceutical products (including Nicorette® (nicotine polacrilex)

Troche/Lozenge, 2mg and 4mg) to New Jersey residents; and it regularly solicits business from, does business with, and derives revenue from such goods provided to customers in New Jersey.

22. On information and belief, GSK LLC maintains one or more offices and/or other facilities in New Jersey.

23. On information and belief, GSK LLC maintains a domestic headquarters at 184 Liberty Corner Road, Warren, New Jersey 07059.

24. On information and belief, GSK LLC has a principal place of business at 184 Liberty Corner Road, Warren, New Jersey 07059.

25. On information and belief, GSK LLC has a regular and established place of business at 184 Liberty Corner Road, Warren, New Jersey 07059.

26. On information and belief, GSK LLC operates as a subsidiary of GlaxoSmithKline plc. On information and belief, GlaxoSmithKline plc and/or its subsidiaries, including GSK LLC, maintain a regular and established place of business at 184 Liberty Corner Road, Warren, New Jersey 07059. On information and belief, the corporate office facilities at Warren house a cross-functional mix of employees, including marketing and sales, research and development, quality, and supply chain teams.

27. On information and belief, GSK LLC is registered to do business in New Jersey.

28. On information and belief, GSK LLC has purposely availed itself of the jurisdiction of this Court, including, but not limited to, by filing suit in, or removing actions to, this District: *Xerox Corp. v. GlaxoSmithKline, LLC*, 2:17-cv-02283; *Arrigo v. GlaxoSmithKline, LLC et al.*, 2:16-cv-04098; *GlaxoSmithKline Biologicals S.A. et al. v. Pfizer, Inc.*, 1:15-cv-01283; *GlaxoSmithKline PLC et al. v. Hikma Pharm. Co. et al.*, 3:12-cv-01965.

29.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b), and the MMA (21 U.S.C. § 355(j)).

**PATENTS-IN-SUIT**

30.     According to the online records of the U.S. Patent and Trademark Office ("USPTO"), the '164 patent, entitled "Nicotine Lozenge Compositions," issued on August 6, 2013, to GSK LLC.

31.     According to the online records of the USPTO, the '164 patent currently is assigned to GSK LLC.

32.     According to the online records of the USPTO, the '772 patent, entitled "Nicotine Lozenge Composition," issued on January 27, 2015, to GSK LLC.

33.     According to the online records of the USPTO, the '772 patent currently is assigned to GSK LLC.

**ALLEGATIONS COMMON TO ALL COUNTS**

**A.     FDA Approval Of New Brand-Name Drugs.**

34.     The FFDCA, 21 U.S.C. § 301 *et seq.*, as amended by Hatch-Waxman, and as further amended by Title XI of the MMA, sets forth a statutory framework that FDA follows for the approval of both brand-name and generic drugs.

35.     Under the FFDCA, as amended by Hatch-Waxman and the MMA, an applicant seeking to market a new brand-name drug that has not been previously approved must prepare a New Drug Application ("NDA") for consideration by FDA.  *See* 21 U.S.C. § 355.

36.     An NDA includes, among other things, the number of any patent that the NDA holder asserts claims the "drug" or a "method of using [the] drug" for which the NDA was

submitted and for which a claim of patent infringement could reasonably be asserted against an unauthorized party. *See* 21 U.S.C. § 355(b)(1), (c)(2); 21 C.F.R. § 314.53(b), (c)(2).

37.     Upon approval of the NDA, FDA publishes patent information for the approved drug in "Approved Drug Products with Therapeutic Equivalence Evaluations," commonly known as the "Orange Book." *See* 21 U.S.C. § 355(j)(7)(A)(iii).

**B.     Generic Competition – Abbreviated New Drug Applications.**

38.     In 1984, Congress enacted the Hatch-Waxman Amendments to the FFDCA. Congress passed Hatch-Waxman to simplify the procedure for obtaining approval of generic drugs, for the purpose of decreasing the cost of pharmaceuticals through increased competition. Under Hatch-Waxman, a generic manufacturer submits what is called an Abbreviated New Drug Application ("ANDA").

39.     To receive approval of its ANDA, an applicant must, *inter alia*, show that its generic drug is "bioequivalent" to the listed reference drug. *See* 21 U.S.C. § 355(j)(4)(F).

40.     When filing an ANDA seeking approval of a generic version of a drug listed in the Orange Book, the ANDA applicant generally must also "certify" that any patent information listed in the Orange Book does not preclude FDA approval of a generic version of the drug. *See* 21 U.S.C. § 355(j)(2)(A)(vii); 21 C.F.R. § 314.94(a)(12).

41.     When seeking FDA approval to market prior to patent expiration, an ANDA applicant may submit a so-called "paragraph IV" certification asserting that the listed patent is invalid, unenforceable, and/or will not be infringed. *See* 21 U.S.C. § 355(j)(2)(A)(vii)(IV).

42.     An applicant submitting an ANDA containing a paragraph IV certification must notify both the purported patent owner and NDA holder of its paragraph IV certification, commonly referred to as a "notice letter." *See* 21 U.S.C. § 355(j)(2)(B).

9

43.     Except in circumstances inapplicable here, if the patent owner brings suit within 45 days of receiving the notice letter, the FDA cannot give final approval to the ANDA for 30 months, unless the district court enters an order shortening that period or the district court decides that the patent is invalid or not infringed (including any substantive determination that there is no cause of action for patent infringement or invalidity) before expiration of such 30 month period.  *See* 21 U.S.C. § 355(j)(5)(B)(iii).

**C.      180-Day Generic Exclusivity And Forfeiture Under The MMA Forfeiture Provisions.**

44.     The first company to file a substantially complete ANDA containing a paragraph IV certification to an Orange Book-listed patent and provide appropriate notice to the FDA, the NDA holder, and all patent owner(s) for a particular generic product (the so-called "first-filer") is eligible for a 180-day period of marketing exclusivity against other companies that subsequently file ANDAs referencing the same branded drug product.  *See* 21 U.S.C. § 355(j)(5)(B)(iv)(I).

45.     Generally speaking, FDA will not grant final approval to any subsequently filed ANDA containing a paragraph IV certification until the date that is 180 days after the date of the first commercial marketing of the drug by any first-filer ANDA applicant.  *See* 21 U.S.C. § 355(j)(5)(B)(iv)(I).

46.     Significantly, Congress never intended the 180-day generic exclusivity period to indefinitely, or unduly, delay the start of generic competition.

47.     The MMA, for example, includes a provision allowing an ANDA applicant to bring a declaratory judgment action for non-infringement or invalidity of an Orange Book-listed patent if the NDA holder does not sue within 45 days of receiving the applicant's notice letter.

21 U.S.C. § 355(j)(5)(C). If the ANDA applicant's notice letter includes grounds of non-infringement, the notice letter must include an OCA. *Id.*

48. The MMA, as another example, includes six express statutory forfeiture provisions for the 180-day exclusivity period. *See* 21 U.S.C. § 355(j)(5)(D)(i).

49. Under one of the six statutory forfeiture provisions – the so-called "failure to market" forfeiture provision – the first-filer forfeits the 180-day marketing exclusivity if it fails to begin marketing its ANDA product within 75 days after a court finding the Orange Book-listed patent(s) invalid or not infringed in an infringement or declaratory judgment action. Specifically, a first-filer forfeits 180-day generic exclusivity when:

*The first applicant fails to market the drug by the later of--*

(aa) the earlier of the date that is--

(AA) 75 days after the date on which the approval of the application of the first applicant is made effective under subparagraph (B)(iii); or

(BB) 30 months after the date of submission of the application of the first applicant; or

(bb) with respect to the first applicant or any other applicant (which other applicant has received tentative approval), *the date that is 75 days after the date as of which, as to each of the patents with respect to which the first applicant submitted and lawfully maintained a certification qualifying the first applicant for the 180-day exclusivity period under subparagraph (B)(iv), at least 1 of the following has occurred*:

(AA) In an infringement action brought against that applicant with respect to the patent or in a declaratory judgment action brought by that applicant with respect to the patent, *a court enters a final decision from which no appeal (other than a petition to the Supreme Court for a writ of certiorari) has been or can be taken that the patent is invalid or not infringed.*

(BB) In an infringement action or a declaratory judgment action described in subitem (AA), *a court signs a settlement order or consent decree that enters a final judgment that includes a finding that the patent is invalid or not infringed.*

(CC) The patent information submitted under subsection (b) or (c) is withdrawn by the holder of the application approved under subsection (b).

21 U.S.C. § 355(j)(5)(D)(i)(I) (emphasis added).

50.    Thus, Congress *expressly authorized*, and permits, ANDA applicants to bring a declaratory judgment suit for non-infringement and/or invalidity for the purpose of obtaining a court decision sufficient to not only give patent certainty, but also sufficient to cause a forfeiture of the first-filer's 180-day exclusivity under the failure to market forfeiture provision. *See, e.g.*, *Apotex Inc. v. Daiichi Sankyo, Inc.*, 781 F.3d 1356, 1368-69 (Fed. Cir. 2015) (holding the statute authorizes a subsequent ANDA applicant to file a declaratory judgment action to trigger the 75-day statutory period under the failure to market provision (21 U.S.C. § 355(j)(5)(D)(i)(I)) that could ultimately result in a forfeiture of the 180-day exclusivity eligibility for the first-filer).

**D.    Nicorette® (Nicotine Polacrilex) Troche/Lozenges, 2mg and 4mg.**

51.    On information and belief, GSK CHC is the holder of approved NDA No. 022360 for Nicorette® (nicotine polacrilex), Troche/Lozenge, 2mg and 4mg.

52.    On information and belief, Defendants submitted information on the '164 and '772 patents to FDA for listing in the Orange Book.  By virtue of such submission, FDA listed each patent in the Orange Book in connection with approved NDA No. 022360 for Nicorette® (nicotine polacrilex), Troche/Lozenge, 2mg and 4mg.

53.    On information and belief, Defendants caused the '164 and '772 patents to be listed in FDA's Orange Book in connection with NDA No. 022360 for Nicorette® (nicotine polacrilex), Troche/Lozenge, 2mg and 4mg sometime after the 2012 approval of Perrigo's ANDA No. 203690, and by no later than December 1, 2015.

54.    According to information published in FDA's Orange Book in connection with NDA No. 022360 for Nicorette® (nicotine polacrilex), Troche/Lozenge, 2mg and 4mg,

Defendants caused the '164 patent to be listed on or about September 5, 2013, and the '772 patent to be listed on or about February 25, 2015.

55.     By submitting the '164 and '772 patents to FDA for listing in the Orange Book, Defendants have identified them as patents "with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug" product referencing NDA No. 022360 for Nicorette® (nicotine polacrilex), Troche/Lozenge, 2mg and 4mg.  21 U.S.C. § 355(b)(1), (c)(2).

56.     The '164 and '772 patents remain listed in the Orange Book in connection with NDA No. 022360.

57.     Defendants maintain and continue to represent to the public that the '164 and '772 patents claim the drug approved in NDA No. 022360 or a method of using that drug, and that a claim of patent infringement could reasonably be asserted against any unlicensed ANDA applicant who attempts to market a generic version of the drug prior to the expiration of these patents.

58.     According to information Defendants submitted to FDA, and published in FDA's Orange Book, the '164 patent purportedly will expire on or about June 14, 2029, and the '772 patent purportedly will expire on or about April 30, 2029.

**E.     The First-Filer Challenging The Orange Book Patents Listed In Connection With NDA No. 022360 And The Need To Obtain Patent Certainty And A Court Decision To Secure Prompt Final Approval For Perrigo's ANDA Products.**

59.     On information and belief, an ANDA filer other than Perrigo submitted the first ANDA containing a paragraph IV certification to the '164 and/or '772 patents for Nicotine Polacrilex Lozenge, 2mg/4mg (mini) products.

60.    On information and belief, FDA deems this applicant ("First Applicant") eligible for 180-day generic exclusivity.

61.    According to the online information provided by FDA, and on information and belief, the First Applicant submitted the first ANDA containing a paragraph IV certification to the '164 and/or '772 patents on or about December 2, 2015.

62.    On information and belief, the FDA takes the position that 180-day exclusivity was not forfeited even though more than 30 months has elapsed since the First Applicant's submission of its ANDA.

63.    On information and belief, despite having submitted its ANDA *more than 31 months ago*, the First Applicant has failed to secure final FDA approval and thus has not yet begun marketing its ANDA product(s), thereby effectively blocking other generic competitors from getting on the market unless, through a declaratory judgment, a competitor can obtain patent certainty and in the process cause the forfeiture of the First Applicant's eligibility for 180-day exclusivity, as Perrigo seeks to do in this action.

**F.    Perrigo's ANDA Products And Delay Of FDA Approval.**

64.    In November 2011, Perrigo submitted its ANDA No. 203690 seeking FDA approval to market generic Nicotine Polacrilex Lozenge, 2mg/4mg (mini) products.

65.    Perrigo's ANDA No. 203690 referenced GSK CHC's NDA No. 022360 for Nicorette® (nicotine polacrilex), Troche/Lozenge, 2mg and 4mg.

66.    FDA approved Perrigo's ANDA No. 203690 in 2012.

67.    On December 28, 2017, Perrigo submitted a PAS to its approved ANDA No. 203690. Perrigo's PAS included a paragraph IV certification to the '164 and '772 patents, which were listed in the Orange Book after submission and approval of Perrigo's original ANDA,

14

because Perrigo seeks FDA approval to market its generic Nicotine Polacrilex Lozenge, 2mg/4mg (mini) products immediately, before expiration of the '164 and '772 patents.

68. On December 28, 2017, Perrigo caused a notice letter to be sent to, *inter alia*, GSK CHC and GSK LLC ("Perrigo's Notice Letter"). Perrigo's Notice Letter contained detailed factual and legal bases as to why Perrigo's ANDA Products do not infringe any claim of the '164 and '772 patents, and why such patents are invalid. Perrigo's Notice Letter also contained an OCA and expressly advised GSK CHC and GSK LLC that "Perrigo maintain[ed] the right and ability to bring and maintain a declaratory judgment action under 28 U.S.C. § 2201 *et seq.*, pursuant to 21 U.S.C. § 355(j)(5)(C) and 21 C.F.R. § 314.95(c)(8)." Perrigo's Notice Letter also "specifically and expressly reserve[d] the right to raise any and all non-infringement, invalidity, and unenforceability defenses" in the event of litigation.

69. Perrigo's ANDA Products do not infringe any claim of the '164 and '772 patents for at least the reasons set forth in Perrigo's Notice Letter.

70. The claims of the '164 and '772 patents are invalid for at least the reasons set forth in Perrigo's Notice Letter.

71. Defendants did not sue Perrigo for infringement within 45 days following receipt of Perrigo's Notice Letter.

72. Perrigo's paragraph IV certifications as to the '164 and '772 patents have created a controversy between Perrigo and Defendants as to infringement of the '164 and '772 patents and the approval of Perrigo's ANDA.

73. Defendants' actions, including, but not limited to, with respect to submitting and maintaining the '164 and '772 patents in the Orange Book and in response to Perrigo's paragraph IV certifications regarding the '164 and '772 patents, have created a controversy between Perrigo

15

and Defendants as to infringement of the '164 and '772 patents and the approval of Perrigo's ANDA.

74.    The '164 and '772 patents remain listed in the Orange Book with respect to NDA No. 022360, and Defendants maintain and continue to represent to the public that the '164 and '772 patents claim the drug approved in NDA No. 022360 or a method of using that drug, and that a claim of patent infringement could reasonably be asserted against any unlicensed ANDA applicant who attempts to market a generic version of the drug prior to the delisting of these patents.

75.    Perrigo submitted its PAS on December 28, 2017.

76.    On or about June 21, 2018, FDA tentatively approved the PAS that Perrigo submitted on December 28, 2017.

77.    On information and belief, but for the First Applicant's eligibility for 180-day exclusivity, FDA would have granted final approval to Perrigo's December 28, 2017 PAS no later than June 21, 2018.

78.    Because the First Applicant's eligibility for exclusivity remains parked, Perrigo cannot obtain final approval from the FDA, nor can Perrigo obtain patent certainty, until Perrigo secures a judgment from this Court that Perrigo's ANDA Products do not infringe any claims of the '164 and '772 patents.

79.    Perrigo desires to bring its generic ANDA Products to the market at the earliest possible date, with patent certainty, in order to allow the public to enjoy the benefit of generic competition for this product.

80.    Upon information and belief, Defendants' listing of the '164 and '772 patents in the Orange Book for NDA No. 022360, and the associated 180-day exclusivity held by the First

16

Applicant, are the only obstacles preventing the FDA from granting Perrigo's PAS final approval, which would permit Perrigo to immediately launch Perrigo's ANDA Products, thereby providing the public with access to a less-expensive generic drug product.

81.     As there are no unexpired patents other than the '164 and '772 patents, or other exclusivities, listed in the Orange Book for NDA No. 022360, had Defendants not listed the '164 and '772 patents in the Orange Book for NDA No. 022360, there would be no 180-day exclusivity for the First Applicant and Perrigo would have obtained final approval for Perrigo's ANDA products in June 2018.

82.     By listing the '164 and '772 patents in the Orange Book for NDA No. 022360, Defendants caused and are responsible for the current existence of the 180-day exclusivity period for the First Applicant that is blocking and preventing final approval of Perrigo's ANDA Products, thus harming Perrigo and its ability to bring a lower-priced competing generic product to market.

83.     Perrigo may market Perrigo's ANDA Products before expiration of the First Applicants' eligibility for 180-day exclusivity if that exclusivity period is forfeited by, *inter alia*, a triggering event defined by 21 U.S.C. § 355(j)(5)(D)(i)(I), including, but not limited to, a final court decision from which no appeal (other than a petition to the Supreme Court for a writ of certiorari) has been or can be taken that the '164 patent and the '772 patent are not infringed, and failure of the First Applicant to market expeditiously.

84.     If the First Applicant's eligibility for 180-day exclusivity is not forfeited or otherwise extinguished, then that exclusivity period will continue to prevent Perrigo from marketing Perrigo's ANDA Products until the latter of the '164 and '772 patents expires in June 2029.

17

**G.    The '164 Patent.**

85.    The '164 patent, entitled "Nicotine Lozenge Compositions," issued on August 6, 2013.  A true and correct copy of the '164 patent is attached hereto as Exhibit A.

86.    According to the face of the '164 patent:

| | | |
|---|---|---|
| (21) | Appl. No.: | **12/990,049** |
| (22) | PCT Filed: | **Apr. 30, 2009** |
| (86) | PCT No.: | **PCT/US2009/042190** |
| | § 371 (c)(1), (2), (4) Date: | **Oct. 28, 2010** |
| (87) | PCT Pub. No.: | **WO2009/134947** |
| | PCT Pub. Date: | **Nov. 5, 2009** |
| (65) | **Prior Publication Data** | |
| | US 2011/0110880 A1        May 12, 2011 | |
| | **Related U.S. Application Data** | |
| (60) | Provisional application No. 61/049,515, filed on May 1, 2008. | |

87.    The '164 patent is assigned on its face to GlaxoSmithKline LLC.  The named inventor on the face of the '164 patent is Li-Lan Chen.

88.    GSK LLC is the current assignee of the '164 patent according to the online records of the USPTO.

89.    The '164 patent contains three independent claims, claims 1, 12, and 17, which read as follows:

18

1. An oral lozenge composition comprising:

a) a master granule component comprising: at least one an alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate potassium carbonate and potassium bicarbonate and mixtures thereof; at least one dissolution modifier; and at least one diluent; and

b) an extragranular component blended with the master granule component comprising a nicotine active and

at least one alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof.

\* \* \*

12. A nicotine containing lozenge composition with improved user compliance prepared by the process of:

a) granulating at least one alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof, at least one dissolution modifier and at least one diluent into a master granulation,

b) mixing said master granulation with a nicotine active and an alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof; and

c) directly compressing said mixture into oral lozenge dosage forms.

\* \* \*

17. A nicotine containing lozenge composition which provides increased maximum pH in the oral cavity and fast nicotine absorption prepared by the process of:

a) granulating at least one alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof, at least one dissolution modifier and at least one diluent into a master granulation,

b) mixing said master granulation with a nicotine active and an alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof; and

c) directly compressing said mixture into an oral lozenge formulation.

90.     Claims 2-11, 13-16, and 18-22 depend from claims 1, 12 and/or 17, either directly or indirectly, and incorporate all limitations of claims 1, 12, and/or 17. *See* 35 U.S.C. § 112, ¶ 4.

91.     Perrigo's Notice Letter set forth detailed factual and legal bases as to why Perrigo's ANDA Products do not infringe any claim of the '164 patent.

19

92.     Among others, Perrigo's Notice Letter advised Defendants that Perrigo's ANDA Products, *inter alia*:

a.  are *not* products "comprising . . . a master granule component comprising: at least one an alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate potassium carbonate and potassium bicarbonate and mixtures thereof; at least one dissolution modifier; and at least one diluent";

b.  are *not* products "comprising . . . an extragranular component blended with the master granule component comprising a nicotine active and at least one alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof";

c.  are *not* products "prepared by the process of . . . granulating at least one alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof, at least one dissolution modifier and at least one diluent into a master granulation";

d.  are *not* products "prepared by the process of . . . mixing said master granulation with a nicotine active and an alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof";

e.  are *not* products "prepared by the process of . . . directly compressing said mixture into oral lozenge dosage forms";

f.  are *not* products "prepared by the process of . . . directly compressing said mixture into an oral lozenge formulation";

g.  are *not* products "comprising . . . a master granule component comprising: at least one an alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof; at least one dissolution modifier; and at least one diluent wherein the master granule component is obtained through wet or dry granulation";

h.  are *not* products "comprising . . . an extragranular component blended with the master granule component comprising nicotine polacrilex and at least one alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof";

i.  are *not* products "prepared by the process of . . . mixing said master granulation with nicotine polacrilex and an alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof".

93.  Perrigo's Notice Letter also contains a detailed discussion of factual and legal bases as to why the claims of the '164 patent are invalid under at least 35 U.S.C. § 102 and/or § 103.

94.  Defendants did not sue Perrigo for infringement within 45 days following receipt of Perrigo's Notice Letter.

95.    Pursuant to 21 U.S.C. § 355(j)(5)(C)(i)(I)(cc), Perrigo's Notice Letter contained an OCA, as defined by 21 U.S.C. § 355(j)(5)(C)(i)(III).

96.    Under Hatch-Waxman, as amended, Perrigo is restrained from selling a non-infringing product because of Defendants' action of submitting the '164 patent to FDA for listing in the Orange Book, which delays FDA final approval of Perrigo's PAS to its approved ANDA and blocks Perrigo from the market.

97.    Defendants' submission of the '164 patent to FDA creates an independent barrier to the drug market that deprives Perrigo of an opportunity to compete in that market by selling its non-infringing products.

98.    A final and non-appealable court decision relating to Perrigo's non-infringement of any valid claim of the '164 patent would ensure that Perrigo is able to obtain final approval of Perrigo's ANDA Products before expiration of the '164 patent.

99.    A final court decision that Perrigo's ANDA Products do not infringe any valid claim of the '164 patent, in conjunction with a similar final court decision in relation to the '772 patent, would give Perrigo patent certainty and would operate as a potential forfeiture event of the First Applicant's 180-day marketing exclusivity under 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)(AA) should the First Applicant be unable to market within 75 days of such final non-appealable court decision.

100.    For at least the foregoing reasons, a real, actual and justiciable controversy exists between Perrigo on the one hand, and Defendants on the other hand, regarding Perrigo's non-infringement of the '164 patent, constituting a case of actual controversy to ensure that Perrigo's ANDA Products can freely enter the market earlier than they would absent a final and non-appealable order relating to the '164 patent.    This controversy regarding patent certainty is

22

defined under 21 U.S.C. § 355(j)(5)(C)(i)(II) and is within the jurisdiction of this Court under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

**H.     The '772 Patent.**

101.    The '772 patent, entitled "Nicotine Lozenge Composition," issued on January 27, 2015.  A true and correct copy of the '772 patent is attached hereto as Exhibit B.

102.    According to the face of the '772 patent:

(21)   Appl. No.: **13/927,163**

(22)   Filed:        **Jun. 26, 2013**

(65)                        **Prior Publication Data**
       US 2013/0289079 A1        Oct. 31, 2013

**Related U.S. Application Data**

(63)   Continuation of application No. 12/990,049, filed as application No. PCT/US2009/042190 on Apr. 30, 2009, now Pat. No. 8,501,164.

(60)   Provisional application No. 61/049,515, filed on May 1, 2008.

103.    The '772 patent is assigned on its face to GlaxoSmithKline, LLC.  The named inventor on the face of the '772 patent is Li-Lan Chen.

104.    GSK LLC is the current assignee of the '772 patent according to the online records of the USPTO.

105.    The '772 patent contains three independent claims, claims 1, 10, and 15, which read as follows:

1. An oral lozenge composition comprising:

a) a master granule component comprising: at least one an alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof; at least one dissolution modifier; and at least one diluent wherein the master granule component is obtained through wet or dry granulation; and

b) an extragranular component blended with the master granule component comprising nicotine polacrilex and at least one alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof.

* * *

10. A nicotine containing lozenge composition with improved user compliance prepared by the process of:

a) granulating at least one alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof, at least one dissolution modifier and at least one diluent into a master granulation,

b) mixing said master granulation with nicotine polacrilex and an alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof; and

c) directly compressing said mixture into oral lozenge dosage forms.

* * *

15. A nicotine containing lozenge composition which provides increased maximum pH in the oral cavity and fast nicotine absorption prepared by the process of:

a) granulating at least one alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof, at least one dissolution modifier and at least one diluent into a master granulation,

b) mixing said master granulation with nicotine polacrilex and an alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof; and

c) directly compressing said mixture into an oral lozenge formulation.

106.    Claims 2-9, 11-14, and 16-20 depend from claims 1, 10 and/or 15, either directly or indirectly, and incorporate all limitations of claims 1, 10, and/or 15. *See* 35 U.S.C. § 112, ¶ 4.

107.    Perrigo's Notice Letter set forth detailed factual and legal bases as to why Perrigo's ANDA Products do not infringe any claim of the '772 patent.

24

108.    Among others, Perrigo's Notice Letter advised Defendants that Perrigo's ANDA Products, *inter alia*:

a.  are *not* products "comprising . . . a master granule component comprising: at least one an alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate potassium carbonate and potassium bicarbonate and mixtures thereof; at least one dissolution modifier; and at least one diluent";

b.  are *not* products "comprising . . . an extragranular component blended with the master granule component comprising a nicotine active and at least one alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof";

c.  are *not* products "prepared by the process of . . . granulating at least one alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof, at least one dissolution modifier and at least one diluent into a master granulation";

d.  are *not* products "prepared by the process of . . . mixing said master granulation with a nicotine active and an alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof";

e.  are *not* products "prepared by the process of . . . directly compressing said mixture into oral lozenge dosage forms";

25

f. are *not* products "prepared by the process of . . . directly compressing said mixture into an oral lozenge formulation";

g. are *not* products "comprising . . . a master granule component comprising: at least one an alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof; at least one dissolution modifier; and at least one diluent wherein the master granule component is obtained through wet or dry granulation";

h. are *not* products "comprising . . . an extragranular component blended with the master granule component comprising nicotine polacrilex and at least one alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof";

i. are *not* products "prepared by the process of . . . mixing said master granulation with nicotine polacrilex and an alkaline buffering agent selected from the group consisting of sodium carbonate, sodium bicarbonate, potassium phosphate, potassium carbonate and potassium bicarbonate, and mixtures thereof".

109. Perrigo's Notice Letter also contains a detailed discussion of factual and legal bases as to why the claims of the '772 patent are invalid under at least 35 U.S.C. § 102 and/or § 103.

110. Defendants did not sue Perrigo for infringement within 45 days following receipt of Perrigo's Notice Letter.

26

111.    Pursuant to 21 U.S.C. § 355(j)(5)(C)(i)(I)(cc), Perrigo's Notice Letter contained an OCA, as defined by 21 U.S.C. § 355(j)(5)(C)(i)(III).

112.    Under Hatch-Waxman, as amended, Perrigo is restrained from selling a non-infringing product because of Defendants' action of submitting the '772 patent to FDA for listing in the Orange Book, which delays FDA final approval of Perrigo's PAS to its approved ANDA and blocks Perrigo from the market.

113.    Defendants' submission of the '772 patent to FDA for listing creates an independent barrier to the drug market that deprives Perrigo of an opportunity to compete in that market by selling its non-infringing products.

114.    A final and non-appealable court decision relating to Perrigo's non-infringement of any valid claim of the '772 patent would ensure that Perrigo is able to obtain final approval of Perrigo's ANDA Products before expiration of the '772 patent.

115.    A final court decision that Perrigo's ANDA Products do not infringe any valid claim of the '772 patent, in conjunction with a similar final court decision in relation to the '164 patent, would give Perrigo patent certainty and would operate as a potential forfeiture event of the    First    Applicant's    180-day    marketing    exclusivity    under    21    U.S.C. § 355(j)(5)(D)(i)(I)(bb)(AA) should the First Applicant be unable to market within 75 days of such final non-appealable court decision.

116.    For at least the foregoing reasons, a real, actual and justiciable controversy exists between Perrigo on the one hand, and Defendants on the other hand, regarding Perrigo's non-infringement of the '772 patent, constituting a case of actual controversy to ensure that Perrigo's ANDA Products can freely enter the market earlier than they would absent a final and non-appealable order relating to the '772 patent.    This controversy regarding patent certainty is

27

defined under 21 U.S.C. § 355(j)(5)(C)(i)(II) and is within the jurisdiction of this Court under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

## COUNT I
## DECLARATORY JUDGMENT OF NO PATENT INFRINGEMENT
## OF U.S. PATENT NO. 8,501,164

117.   Perrigo realleges and incorporates by reference the allegations of paragraphs 1-116, above, as if fully set forth herein.

118.   Perrigo seeks a judgment from this Court that Perrigo's ANDA Products do not infringe any valid or enforceable claim of the '164 patent.

119.   A present, genuine, and justiciable controversy exists between Perrigo and Defendants concerning, *inter alia*, the issue of whether Perrigo's manufacture, use, offer for sale, sale, and/or importation of Perrigo's ANDA Products would infringe any valid or enforceable claim of the '164 patent.

120.   Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Perrigo is entitled to a judgment from this Court that Perrigo's manufacture, use, sale, offer for sale, and/or importation of Perrigo's ANDA Products would not infringe any valid or enforceable claim of the '164 patent.

## COUNT II
## DECLARATORY JUDGMENT OF NO PATENT INFRINGEMENT
## OF U.S. PATENT NO. 8,940,772

121.   Perrigo realleges and incorporates by reference the allegations of paragraphs 1-120, above, as if fully set forth herein.

122.   Perrigo seeks a judgment from this Court that Perrigo's ANDA Products do not infringe any valid or enforceable claim of the '772 patent.

123.   A present, genuine, and justiciable controversy exists between Perrigo and Defendants concerning, *inter alia*, the issue of whether Perrigo's manufacture, use, offer for sale, sale, and/or importation of Perrigo's ANDA Products would infringe any valid or enforceable claim of the '772 patent.

124.   Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Perrigo is entitled to a judgment from this Court that Perrigo's manufacture, use, sale, offer for sale, and/or importation of Perrigo's ANDA Products would not infringe any valid or enforceable claim of the '772 patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Perrigo Research & Development Company respectfully requests the following relief:

A.   Declaring that the manufacture, use, offer for sale, sale, and/or importation into the United States of Perrigo's ANDA Products will not infringe any valid and enforceable claim of the '164 patent;

B.   Declaring that the manufacture, use, offer for sale, sale, and/or importation into the United States of Perrigo's ANDA Products will not infringe any valid and enforceable claim of the '772 patent;

C.   Declaring that Perrigo's launch of Perrigo's ANDA Products prior to June 14, 2029 does not constitute infringement of the '164 patent;

D.   Declaring that Perrigo's launch of Perrigo's ANDA Products prior to April 30, 2029 does not constitute infringement of the '772 patent;

E.   Entering final judgment that Perrigo's ANDA Products do not infringe any valid or enforceable claim of the '164 patent;

F.   Entering final judgment that Perrigo's ANDA Products do not infringe any valid or enforceable claim of the '772 patent;

G.   Declaring that FDA may finally approve Perrigo's December 28, 2017 PAS to its ANDA No. 203690 whenever the application is otherwise in condition for approval, without waiting for any further order, judgment or decree of this Court; and

H. Such other and further relief as the Court may deem just and proper.

Dated: July 19, 2018

*/s/ Melissa E. Flax*

Melissa E. Flax
Michael Cross
CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey
Telephone: (973) 994-1700
Facsimile:  (973) 994-1744
MFlax@carellabyrne.com
MCross@carellabyrne.com

Christine J. Siwik
William A. Rakoczy
Gregory A. Duff
Trang D. Hoang
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, IL 60654
(312) 222-6304 (telephone)
(312) 222-6324 (facsimile)
csiwik@rmmslegal.com
wrakoczy@rmmslegal.com
gduff@rmmslegal.com
thoang@rmmslegal.com

*Attorneys for Plaintiff Perrigo Research &*
*Development Co.*

30

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify that the matter in controversy is not the subject of any other action pending in this or any other court.

*/s/ Melissa E. Flax*
Melissa E. Flax
CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey
Telephone: (973) 994-1700
Facsimile:  (973) 994-1744
MFlax@carellabyrne.com

31